IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| J&J SPORTS PRODUCTIONS,<br><br>              *Plaintiff*,<br><br>   v.<br><br>BILL KITSIOS, *et al.*,<br><br>              *Defendants*. | CIVIL ACTION<br>NO. 16-04881 |

**PAPPERT, J.**                                                                                                                                                                                 **June 1, 2018**

## MEMORANDUM

      J & J Sports Productions sued Asteri Corporation and Bill Kitsios for the unlawful interception of broadcast programing under the Cable Communications Policy Act, 47 U.S.C. § 553 and § 605. J & J alleges that Kitsios is the president of Asteri, that Asteri owned City Bar & Grill, and that the Defendants unlawfully intercepted and televised the Floyd Mayweather, Jr. v. Marcos Maidana II boxing match at that bar. (Compl. ¶ 16, ECF No. 1; App. for Def. J., Ex. 1–3, ECF No. 18-3.) Neither Defendant pled nor otherwise defended the lawsuit, and the Clerk of Court entered default on April 3, 2017. (ECF No. 13.) J & J moved for default judgment against Kitsios on October 3, 2017 (ECF No. 18), and seeks statutory damages, enhanced statutory damages, and attorneys' fees and costs.[1] The Court grants the motion in part for the reasons that follow.

---

[1]     J & J voluntarily dismissed Asteri on September 13, 2017. (ECF No. 17.)

I

A consequence "of the entry of a default judgment is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citations and internal quotation marks omitted). The Court need not, however, accept the moving party's legal conclusions. *Id.*; *see also DirecTV, Inc. v. Asher*, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing 10 A Wright & Miller, *Federal Practice and Procedure* § 2688, a 58–59, 63 (3d ed. 1998)).

J & J is a pay-per-view distributor and licensor that obtained exclusive nationwide commercial distribution rights to the September 13, 2014 boxing match between Mayweather and Maidana ("the fight"). (Compl. ¶¶ 16–18.) J & J entered into commercial sublicensing agreements with various establishments, which granted them the right to display the fight. (*Id.*) The cost of a commercial sublicense ranged between $2,200 and $6,000 based on the capacity of the establishment, and the price for a sublicense for City Bar & Grill ("the bar") was $2,200. (App. for Def. J., Ex. 2 ("Gagliardi Affidavit"), ¶ 8, ECF No. 18-4.)

The Court scheduled an evidentiary hearing for May 15, 2018 to enable J & J to demonstrate that Kitsios, in his capacity as president of Asteri, owned and operated the bar. (ECF No. 19.) J & J's counsel, citing a scheduling oversight, did not attend the hearing in person but joined by telephone. Surprisingly, Kitsios attended. After the Court explained to him that default had been entered and that J & J was seeking default judgment, Kitsios confirmed that he was the president of Asteri and that Asteri owned the bar. (Hr'g Tr. at 19:14–20:1, ECF No. 23.) He also stated that although the

fight was televised at the bar, he did not order the fight to be shown nor was he present when it was. (*Id.* at 6:1–2; 21:5–8.) The hearing was subsequently adjourned to allow the parties a chance to settle the case. They did not do so (Pl.'s Status Rep., ECF No. 22) and the Court now addresses the motion.

II

Rule 55(b)(2) authorizes a court to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading.[2] *See Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 177 n.9 (3d Cir. 1990). Three factors guide whether default judgment should be granted: (1) prejudice to the plaintiff if default judgment is denied; (2) whether the defendants appear to have a litigable defense; and (3) whether the defendants' delay is due to culpable conduct. *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).

Application of the *Chamberlain* factors supports entry of default judgment. First, denying the motion will prejudice the J & J. "Considerable delays," especially those that might "stretch on indefinitely," are sufficient to show prejudice to the plaintiff. *Grove v. Rizzi 1857 S.P.A.*, No. 04-2053, 2013 WL 943283, at *2 (E.D. Pa. Mar. 12, 2013). Kitsios failed to answer or otherwise respond, compelling J & J to seek a default judgment. *See, e.g.*, *Moody Nat'l FFI Meadowlands Mt, LLC v. Gager*, No. 12-2124, 2013 WL 622128, at *10 (D.N.J. Jan 24, 2013). At no point did he contest the entry of default judgment at the hearing. (Hr'g Tr. at 14:5–13, 16:16–22.) Further, it does not appear that Kitsios has a litigable defense; courts in this district have considered the failure to respond to the Complaint to suggest a lack of a litigable

---

[2] J & J served the summons and complaint on February 3, 2017. (ECF No. 10.)

defense. *See, e.g.*, *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261 (E.D. Pa. 2011). Finally, Kitsios's failure to "engage [ ] in the litigation process" constitutes "culpable conduct with respect to the entry of a default judgment—indeed, for the Court to conclude otherwise would be to reward the recalcitrant or the oppositional and uncooperative." *E. Elec. Corp. of N.J. v. Shoemaker Constr. Co.*, 657 F. Supp. 2d 545, 554 (E.D. Pa. 2009). Kitsios was served with the Complaint and put on notice as to his obligation to file a responsive pleading; he even attended the hearing. The "equities of the situation and the need for efficacious resolution of controversies" thus weigh in favor of entering default judgment. *Summit Tr. Co. v. Paul Ellis Inv. Assocs., LLC*, No. 12-6672, 2013 WL 3967602, at *4 (E.D. Pa. Aug. 2, 2013) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984)).

III

A

J & J brought this action pursuant to 47 U.S.C. §§ 553 and 605. Both statutes "prohibit the unauthorized interception and exhibition of communications." *J & J Sports Prods., Inc. v. Cruz*, No. 14-2496, 2015 WL 2376051, at *2 (E.D. Pa. May 18, 2015). Section 553 "prohibits the unauthorized interception and transmission of cable communications, whereas § 605 prohibits the unauthorized interception and transmission of encrypted satellite cable programing." *Joe Hand Promotions, Inc. v. Yakubets*, No. 12-4583, 2013 WL 52241123, at *2 (E.D. Pa. Sep. 17, 2013). J & J seeks judgment under § 553, and without being able to say if the fight was intercepted by

4

cable or satellite, the Court presumes that the interception was by cable under § 553.³ *See id.* at \*5; *see also J & J Sports Prods., Inc. v. Smalls*, No. 16-4883, 2017 WL 4680612, at \*2 (E.D. Pa. Oct. 18, 2017). Based on J & J's well-pleaded allegations, affidavits and Kitsios's admission at the hearing that the fight was shown at the bar, J & J is entitled to damages under § 553. (App. for Def. J., Ex. 1–3; Hr'g Tr. at 21:5–11.)

J & J seeks to hold Kitsios vicariously liable for the unlawful interception. An individual may be held vicariously liable for a violation of § 553 if he "(1) has the right and ability to supervise the violative activity, although…he need not know of the violative activity, and (2) has a direct financial interest in the violation[.]" *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. d 261, 296 (E.D. Pa. Mar.11, 2014); *see also J & J Sports Prods., Inc. v. Hackett*, No. 16-2725, 2017 WL 2912403, at \*5 (E.D. Pa. Sept. 6, 2017). As president of Asteri, the corporation that owned the bar, Kitsios had the right and ability to supervise the activity that occurred there. (App. for Def. J., Ex. 1; Hr'g Tr. at 19:14–20:4.) Moreover, he had a direct financial interest in the violative activity because the money generated by the bar flowed to him. *See Yakubets*, 3 F. Supp. at 300; *see also Smalls*, 2017 WL 4680612 at \*2 (holding individual defendant liable under § 553 for violation that occurred at bar the defendant owned).

B

J & J requests $6,600 in statutory and $30,000 in enhanced statutory damages from Kitsios. (App. for Default J. at 3.) Section 553(c)(3)(A)(ii) permits an aggrieved party to "recover an award of statutory damages for all violations involved in the action,

---

³ Section 553 provides "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1).

in a sum of not less than $250 or more than $10,000 as the court considers just." 47 U.S.C. § 553(c)(3)(A)(ii).  J & J asks the Court to consider the statute's purpose of deterring piracy when computing statutory damages.  (App. for Def. J. at 10–12.)  Courts in this district have held that "statutory damages under § 553(c)(3)(A)(ii) 'should be calculated based solely on an estimate of actual damages,' without considering deterrence."  *Yakubets*, 3 F. Supp. 3d at 276; *see also Smalls*, 2017 WL 4680612 at *3 (finding statutory damages should approximate actual damages); *Cruz*, 2015 WL 2376051 at *6 (holding that statutory damages under § 605 are based solely on actual damages).  The Court awards $2,200 in statutory damages, the commercial sublicensing fee the bar would have paid to legally televise the fight.  *See* (Gagliardi Affidavit ¶ 8); *see also Smalls*, 2017 WL 4680612 at *3 (awarding statutory damages for the cost of the sublicense fee).

Under § 553(c)(3)(B), courts may award enhanced statutory damages "[i]n any case in which the court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain[.]"  47 U.S.C. § 553(c)(3)(B).  The statute requires "intent and either knowledge of or reckless disregard for the illegality of the conduct, and not mere negligence."  *Yakubets*, 3 F. Supp. 3d at 283.  Here, there is no evidence that Kitsios "*actually* supervised or authorized the violation, or otherwise participated in it[.]"  *Yakubets*, 3 F. Supp. at 302 (emphasis in original); *see also Smalls*, 2017 WL 4680612 at *3 (declining to impose enhanced statutory damages against an individual that owned bar that illegally broadcast fight).  Kitsios did not order the fight to be televised, nor was he present at the bar.  (Hr'g Tr. at 6:1–2; 14:21–22; 21:5–8.)

An appropriate Order follows.

BY THE COURT:

_/s/ *Gerald J. Pappert*_
GERALD J. PAPPERT, J.